UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-mc-80533-UNA

IN THE MATTER OF THE
EXTRADITION OF
JOSEPH ANTHONY BELL
_____/

FILED BY ____KJZ____ D.C.

Apr 26, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## ORDER GRANTING THE GOVERNMENT'S MOTION FOR DETENTION [DE 9] AND DENYING BOND IN EXTRADITION PROCEEDING

THIS CAUSE came before the Court upon the Government's Motion for Detention Pending Extradition Proceedings [DE 9]. Defendant[1] Joseph Anthony Bell filed a Response in Opposition to the Government's Motion for Detention Pending Extradition Proceedings [DE 16] in which he requested to be released pending extradition proceedings in this case.

The Court held a bond/detention hearing on April 8, 2021, at which Defendant appeared by Zoom Video-Teleconference ("VTC") due to the COVID-19 pandemic, and pursuant to the CARES Act and Administrative Orders entered by Chief Judge K. Michael Moore. The Defendant waived his physical presence in the Courtroom and agreed to appear at the hearing by Zoom VTC, with the advice of competent counsel, and the Court found this waiver and consent to be knowing and voluntary. The Court further found that the hearing could not be further delayed without serious harm to the interests of justice. Therefore, the hearing proceeded by VTC.

At the conclusion of the hearing, the Court took the matter of bond/detention under advisement pending submission of supplemental memoranda by the parties. The Government and Defendant timely submitted supplemental filings, in which the Government argued for detention

---

[1] When referring to a person subject to an international extradition request, courts use the varied terms Relator, Extraditee, Accused, or Defendant. For convenience and consistency purposes, this Court will refer to Mr. Bell as Defendant.

and the Defendant argued for release on a personal surety bond. [DEs 18, 19]. The Court has carefully reviewed the parties' filings, the argument of counsel, and the entire docket in this case. This written Order follows.

### I.   Factual Background and Procedural History

On March 10, 2021, the United States Attorney's Office filed a Complaint [DE 1] in this District seeking a warrant for Defendant's arrest pending his extradition to the UK. The Court issued an arrest warrant that same day. According to the Complaint, the United States was acting on the request from the Government of the United Kingdom, pursuant to 18 U.S.C. § 3184 and its extradition treaty[2] with the United States ("the Treaty").

The United Kingdom seeks Defendant's extradition to try him on one count of rape, in violation of United Kingdom law, to wit: Section 1 of the Sexual Offences Act 2003 (Rape). Defendant allegedly committed this offense within the jurisdiction of the United Kingdom. A Magistrates' Court sitting in Westminster, United Kingdom, issued a warrant for Bell's arrest on September 2, 2016.

The warrant and supporting documents included in the extradition request lay out the following allegations. On the evening of February 26, 2014, a man who the female victim knew as "Bell Williams" asked if he could visit her apartment. The victim agreed and Defendant came over before the victim needed to go to work. Together, the victim and Defendant left the apartment, and walked to a bus stop. Defendant then claimed to have left something at the victim's apartment;

---

[2] Extradition Treaty Between the Government United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., Mar. 31, 2003, S. TREATY DOC. NO. 108-23 (2004) as amended by the Instrument as contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union signed 25 June 2003, as to the application of the Extradition Treaty Between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland signed 31 March 2003, U.S.-U.K., Dec. 16, 2004, S. TREATY DOC. NO. 109-14 (2006) (the "Instrument") (collectively referenced hereinafter as the "Treaty").

the victim was hesitant to return, but she ultimately agreed. Upon entering, Defendant locked the door and asked the victim for a kiss, but she said no. Defendant then pushed the victim onto her bed where he held her down and forcibly engaged in nonconsensual intercourse with her. The victim attempted to fight and resist him during the attack. Immediately after, Defendant told the victim, "I knew you'd never have sex with me." The next day, Defendant called the victim, telling her "you're my woman now, we made love."

The victim reported the incident to police on March 1, 2014. A forensic exam was administered, and semen was retrieved from an unknown male. The victim provided police with a business card that Defendant had given her and provided the phone number he used to communicate with her. The phone was registered to Defendant's wife. The victim also gave a videotaped interview in which she accused the Defendant of Rape and identified a photograph of Defendant as the man who raped her.

## II.   Applicable Law

A foreign or international extradition proceeding is not a criminal case. *Martin v. Warden, Atlanta, Pen.,* 993 F.2d 824, 829 (11th Cir. 1993); *Kamrin v. United States,* 725 F.2d 1225, 1227–28 (9th Cir. 1984). "Foreign extraditions are *sui generis* in nature, neither civil nor criminal in nature and set forth their own law." *In re Extradition of Mohammad Safdar Gohir,* 2014 WL 2123402, at *6 (D. Nev. 2014); *In re Extradition of Vargas,* 978 F.Supp.2d 734, 744 (S.D. Tex. 2013). The process of formal extradition is a diplomatic process, governed generally by the applicable extradition treaty and the federal extradition statute, 18 U.S.C. §§ 3181–3196. *In re Extradition of Mohammad Sadfar Gohir, supra,* at *6.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings. Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3); *Afanesjev v. Hurlburt,* 418 F.3d 1159, 1164–65 (11th Cir. 2005); *Melia v. United States,* 667 F.2d 300, 302 (2d Cir. 1981); *Bovio v. United States,* 989 F.2d 255, 259 n. 3 (7th Cir. 1993).

There is little statutory guidance on the issue of bond or detention pending future proceedings in extradition matters. The Bail Reform Act does not apply to extradition proceedings. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2); *In re Extradition of Shaw*, No. 14-MC-81475-WM, 2015 WL 521183, at *5 (S.D. Fla. Feb. 6, 2015); *In re Extradition of Nacif–Borge,* 829 F. Supp. 1210, 1213 (D. Nev. 1993); *In re Extradition of Mohammad Sadfar Gohir, supra,* 2014 WL 2123402, at *11. As such, "[f]ederal district courts have almost exclusively, and by necessity, developed a federal common law to fill in the gaps left by current legislation for bail determinations in foreign extradition cases." *In re Extradition of Garcia,* 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010). "This lack of guidance has created contradictory, and often irreconcilable, lower court opinions on the subject of bail availability for defendants facing international extradition." *Id.*

There is a presumption against bond in extradition proceedings, reflecting the value placed on the United States fulfilling its obligations under international law to the requesting country. *Wright v. Henkel,* 190 U.S. 40, 62–63, 23 S. Ct. 781, 47 L.Ed. 948 (1902); *In re Extradition of Russell,* 805 F.2d 1215, 1216–1217 (5th Cir. 1986); *Martin v. Warden, Atlanta Pen.,* 993 F.2d 824, 827 (11th Cir. 1993); *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1306 (S.D. Fla. 2017); *In re Extradition of Jacques Pelletier*, No.

09–22416–MC, 2009 WL 3837660, at *3 (S.D. Fla. Nov. 16, 2009). This is because in a foreign or international extradition, the United States is obligated to deliver the person after he is apprehended, and granting bond could make that obligation impossible to fulfill. *Wright v. Henkel, supra,* 190 U.S. at 62; *In re Extradition of Jacques Pelletier, supra,* 2009 WL 3837660, at *3.

A defendant in an extradition case may be released on bond if he can prove "special circumstances." *Wright v. Henkel, supra,* 190 U.S. at 63; *Martin v. Warden, Atlanta Pen., supra,* 993 F.2d at 827; *In re Extradition of Ghandtchi,* 697 F.2d 1037, 1038 (11th Cir. 1983); *In re Extradition of Shaw*, 2015 WL 521183, at *5; *In re Extradition of Jacques Pelletier, supra*. "[C]ourts consistently agree that special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extradites." *In re Extradition of Shaw*, 2015 WL 521183, at *4–6; *In re Extradition of Garcia,* 761 F. Supp. 2d at 472. However, what exactly constitutes "special circumstances" has yet to be defined. Courts have only described this concept in the abstract, leaving trial courts without specific factors or parameters to follow. *Id.* However, as noted by United States Magistrate Judge Simonton, although there is some conflict among the courts, "the majority of cases that have addressed the issue have determined that the court should undertake the risk of flight analysis separate from the 'special circumstances' inquiry." *Arias Levia v. Wilson,* 17-cv-23938, 2018 WL 9662548, * 3 (S.D. Fla. August 27, 2018).

The defendant bears the burden of proof of establishing that he is neither a flight risk, nor a danger to the community, and that special circumstances warrant his release. *Salerno v. United States,* 878 F. 2d 317, 318 (9th Cir. 1989); *In re Extradition of Garcia, supra,* 761 F. Supp. 2d at 474; *United States v. Leitner,* 784 F. 2d 159, 160 (2d Cir. 1986). Some courts have determined that

a defendant must meet his burden by clear and convincing evidence. *See, e.g., In re Extradition of Mohammad Gohir, supra,* 2014 WL 2123402, at *11; *United States v. Ramnath,* 533 F. Supp. 2d 662, 665–66 (E.D. Tex. 2008). Other courts have held that a preponderance of the evidence standard applies. *In re Extradition of Santos,* 473 F. Supp. 2d 1030, 1036 n. 4 (C.D. Cal. 2006); *In re Extradition of Garcia, supra,* 761 F. Supp. 2d at 474–75.

"The case law also reflects an inconsistency among courts in their analysis of flight risk in relation to the 'special circumstances' inquiry. Most courts treat flight risk as a separate, independent factor from the special circumstances analysis." *In re Garcia,* 761 F. Supp. 2d at 472. The courts that examine risk of flight and special circumstances separately thus "require the potential extraditee to establish the following two factors before [they] can grant bail in a foreign extradition case: (1) 'special circumstances' exist in their particular case; and (2) they are not a flight risk or a danger to the community." *Id.* at 472–73; *In re Extradition of Shaw*, 2015 WL 521183, at *4–6. In *Shaw*, the Defendant contested the denial of bond and certification of extradition over a two-year period in various actions, all of which were unsuccessful.[3]

In sum, though unusual and extraordinary, it is not entirely impossible to obtain bond in international extradition proceedings. *Nacif–Borge, supra,* 829 F. Supp. at 1213; *In re Extradition of Gohir, supra,* 2014 WL 2123402, at *11.

---

[3] The original Complaint in Mr. Shaw's Extradition proceeding was filed in this district on November 25, 2014 in case number 14-cv-81475-WM. After Mr. Shaw was denied bond and his extradition to Thailand was certified on May 28, 2015 in that case, he continued his efforts to be released on bond and to fight extradition. On July 9, 2015, he filed a Petition for Writ of Habeas Corpus contesting the denial of bond and the certification of extradition in the United States District Court for the Southern District of Florida under case number 15-cv-80944-RLR, which relief was denied on August 9, 2016. He then appealed to the Eleventh Circuit Court of Appeals on September 19, 2016 in Eleventh Circuit case number 16-15938, which appeal was dismissed on October 13, 2016. Three days later, on October 16, 2016, he filed yet another Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of Florida under case number 16-cv-24363-JEM, seeking immediate release from custody, which relief was denied. After all these efforts, Mr. Shaw was surrendered by the United States to Thailand on November 30, 2016 [16-cv-24363-JEM, DE 25].

### III.    Analysis

Defendant requests release pending his extradition hearing, arguing that: special circumstances are presented; he is neither a danger to the community nor a flight risk; the diplomatic necessity for denying bail is not present because bail would be available in the UK for an extradition request by the United States or for a domestic prosecution of rape in the UK; the UK's extensive delay in bringing charges and seeking of extradition demonstrates that this prosecution was not a priority; the COVID-19 global pandemic poses unique health risks to Defendant, who is at increased risk due to a heart condition and diabetes; and, the COVID-19 global pandemic will cause significant delays in the adjudication of this matter, all of which counsel in favor of his release.

The Government argues that: there is a strong presumption against bond in extradition matters; Defendant has not shown the existence of any special circumstances justifying his release on bond; Defendant poses a significant risk of flight due to his significant ties to Jamaica, his incentive to flee and the seriousness of the charges lodged against him; and that Defendant is a danger to the community.

#### a.   There are no special circumstances in this case.

Determining the existence of special circumstances involves a fact-specific inquiry, and special circumstances will be found only where justification for release is clear. *In re Extradition of Shaw*, 2015 WL 521183, at *4–6; *See, e.g., United States v. Williams,* 611 F.2d 914, 915 (1st Cir. 1979); *Ramnath, supra,* 533 F. Supp. 2d at 666–67. In this case, the Court does not find sufficient justification for release. The Court further finds that Defendant failed to prove the existence of special circumstances, individually or in the aggregate, that would warrant his release

pending extradition.[4] In the following paragraphs, the Court addresses the alleged specific special circumstances which the Defendant argues are present in this case.

### **Availability of Bail in the UK (or in the United States if this were a Domestic Rape Case) is not a Special Circumstance in this case:**

After considering the totality of the circumstances, the Court finds that the availability of bail in the UK is not a special circumstance in this case. *See, e.g., Matter of Extradition of Martinelli Berrocal, supra,* 263 F. Supp. 3d at 1299. The Court has carefully considered this argument and finds it to be unavailing. Merely because the Defendant Bell may seek bail once he arrives in the UK does not mean that he must or should be given bail here in the United States before he ever arrives in the UK. Moreover, such an argument would be applicable to virtually all persons being extradited to the UK and is therefore a "general circumstance"—not a proper "special circumstance" in this case. *See, e.g., In Matter of Extradition of Headley,* 18-mc-81148-UNA, 2018 WL 4938553 at * 8 (S.D. Fla. October 10, 2018) (the availability of bail in Canada not a special circumstance).

As noted by Magistrate Judge Torres in *Matter of Extradition of Martinelli Berrocal,* "President Martinelli is, of course, free to waive any further extradition proceedings here and return to Panama expeditiously, where he can again seek bail. Or he can elect to avail himself of all the limited process he is entitled to under our law in an effort to stave off extradition." 263 F.Supp. 3d at 1284.[5] This is also true with Defendant Bell. However, the fact that Defendant may be entitled

---

[4] The Court notes, as discussed previously in Section II of this Order, that there is a conflict among the courts as to whether a defendant must prove the existence of a special circumstance by a preponderance of the evidence standard, or by the higher clear and convincing evidence standard. The Court does not need to address this conflict however, because it finds that Defendant has failed to meet his burden by the lower preponderance of the evidence standard and, therefore, he necessarily has not met the higher clear and convincing evidence standard.

[5] The effort to extradite the former Panamanian President, Ricardo Alberto Martinelli Berrocal, which ultimately resulted in his extradition from the United States to Panama, is an interesting saga. U.S. Magistrate Judge Edwin G. Torres, who presided over the extradition proceeding, denied the former President's release pending extradition on

to bail in the UK (or in the United States if this were a domestic rape case) does not override the United States' treaty obligations to deliver him to the UK, or the law this Court must follow in extradition bail proceedings. Defendant's argument that he is entitled to bail in the UK is more properly presented to the presiding judicial official in the UK if and when he arrives in that jurisdiction. Such does not constitute a special circumstance authorizing release here.

**Lack of Criminal Record and U.S. Citizenship not Special Circumstances in this case**:

The Court also finds that Defendant's lack of criminal record and U.S. citizenship are not special circumstances in this case. *See, e.g., In re Extradition of Pelletier*, No. 09-22416-MC, 2009 WL 3837660, at *2 (S.D. Fla. Nov. 16, 2009); *Matter of Extradition of Berrocal,* 263 F. Supp 3d at 1300; *In re Extradition of Shaw*, 2015 WL 521183 at *7. First, the fact of Defendant's U.S. citizenship would apply to all U.S. citizens sought to be extradited by a foreign country and is thus not a special circumstance, but rather a general circumstance.

---

July 7, 2017, *see* 263 F.Supp.3d 1280, and then subsequently certified his extradition to Panama on August 31, 2017. *In the Matter of the Extradition of Martinelli Berrocal,* 17-cv-22197, 2017 WL 3776953 (S.D. Fla. Aug. 31, 2017). The former President then filed an application for a Writ of Habeas Corpus on September 28, 2017 in the Southern District of Florida under case number 17-23576-Civ-Cooke styled Ricardo Alberto Martinelli Berrocal v. Jefferson Beauregard Sessions, III, United States Attorney General, et al. In a brief order entered in that habeas proceeding, U.S. District Judge Marcia G. Cooke granted the former President's motion for release on bond, finding that "…when viewed cumulatively, special circumstances exist to justify Petitioner's release on bond, including his status as a former head of state of a sovereign nation with long-running relations with the United States, his advanced age and deterioration of health while in custody, and the possibility of success on appeal." *Martinelli Berrocal v. Sessions,* 17-23576-Civ-Cooke, 2018 WL 10152504 (S.D. Fla. Feb. 13, 2018). However, after the United States filed a Notice of Appeal to the Eleventh Circuit seeking review of the release order, Judge Cooke stayed her release order. While the Government's appeal proceeded in the Eleventh Circuit under case number 18-10566-QQ, the former President also appealed to the Eleventh Circuit under case number 18-11173-QQ from a related order of Judge Cooke. Ultimately, on May 24, 2018, the former President voluntarily dismissed his appeal in Eleventh Circuit case number 18-11173-QQ, and based upon that action, the Eleventh Circuit deemed the Government's appeal in 18-10566-QQ as moot and stated: "We vacate the judgment entered by the district court and remand to dismiss as moot. Upon remand, Judge Cooke dismissed the Habeas petition on July 13, 2018. The end result was that Mr. Martinelli Berrocal was never released on bond and was extradited to Panama on June 11, 2018. *See* United States Department of Justice, *Justice News*, (June 11, 2018), https://www.justice.gov/opa/pr/us-extradites-former-president-panama-face-illegal-wiretapping-and-embezzlement-charges.

Second, as to Defendant's lack of a criminal record, that is a trait which is shared by many persons subject to extradition. While the lack of a criminal record is commendable, it is not dispositive. The facts alleged by the UK as to the violent nature of the rape that Defendant Bell allegedly committed against the victim are very serious. In light of the serious rape charge lodged against him in the UK, Defendant's lack of a prior criminal record does not constitute a special circumstance.

In sum, the Court has carefully considered Defendant's U.S. citizenship or lack of a criminal record, but neither constitute a special circumstance in this case whether considered individually or jointly. This is especially true where, as here, there is no argument that probable cause is lacking, and no basis for this Court to find, on the present record, that there is a lack of probable cause to support the rape charge, or any other deficiencies in the UK's extradition request.

**Alleged Delay by the UK in Bringing Case**:

Additionally, any alleged delay on the UK's part in bringing this case does not trouble this Court. *In re Extradition of Drumm*, 150 F. Supp. 3d 92, 98 (D. Mass. 2015) ("The normal passage of time inherent in the ligation process does not constitute a special circumstance."). Here, the UK's extradition request was brought just over two years following the date of the alleged incident. A charge of rape is a very serious one and it is expected that the authorities in the UK would need sufficient time to investigate the allegation and bring forward the appropriate charge against the Defendant. Moreover, international extradition matters are complex and time consuming. The Court sees no unusual or extraordinary delay by the UK in this case. The alleged delay in this case seems justified and reasonable and does not constitute a special circumstance.

**The COVID-19 Global Pandemic**:

Regarding the COVID-19 global pandemic, this Court has very carefully considered this issue as the health of Defendant Bell is of great importance to the Court. However, under the facts of this case, Defendant's medical concerns, while meriting consideration, do not constitute special circumstances. *Berrocal*, 263 F. Supp. 3d at 1301-02; *Noeller*, 2017 WL 6462358, at *8-9; *In re the Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004). Mr. Bell is relatively young and is certainly not of advanced age.

Further, the COVID-19 global pandemic is just that: a *global* pandemic that exists in the UK as well as in this country. *Risner v. Fowler*, 458 F. Supp. 3d 495, 500-05 (N.D. Tex. 2020) (concluding that risk of contracting virus was not a "special circumstance" even for defendant with underlying health conditions). The Defendant is free to raise this issue as supportive of bail if and when he arrives in the UK but such a matter is for the UK Courts to decide once the Defendant is in their custody.

Finally, the COVID-19 pandemic will not prevent this Court from expeditiously determining whether a Certification of Extraditability should be entered in this case. In this regard, the Court notes that a final hearing re: Extradition shall be promptly set in the near future by separate order.

**The Court has Considered the Alleged Special Circumstances**

**Submitted by Bell Individually and Jointly**

The Court has carefully considered each of the alleged special circumstances submitted by the Defendant. Taken individually and jointly, they are insufficient to justify release. In sum, Defendant has failed to demonstrate, even by the lower preponderance of the evidence standard,

11

that there are special circumstances in this case which individually or in combination warrant his release on bond pending extradition.

### b. Defendant has Failed to Establish that he is not a flight risk.

The Court also finds that Defendant has failed to meet his burden of establishing, even by the lesser preponderance of the evidence standard, that he is not a flight risk. Defendant is charged in the UK with rape, which carries a maximum punishment of life imprisonment. This creates a strong incentive to flee. *See, e.g., Shaw*, 2015 WL 521183, at *9 ("[T]he Defendant is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee."); *United States v. Londono-Villa*, 898 F.2d 328, 329 (2d Cir. 1990) (flight risk based in part on potential sentence of approximately twenty-four to thirty years of imprisonment). If released here, Defendant could easily flee to Jamaica, due to his significant ties to that country.

Further, Defendant apparently departed the UK on a flight to Miami less than one month after the date of the alleged offense—thus, it appears to the Court that Defendant has already left the UK's jurisdiction and is apparently refusing to voluntarily return, further demonstrating that he is a substantial flight risk. *See, e.g., United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution."). While the Defendant argues that he is a U.S. citizen who merely returned here, and did not "flee," the fact remains that Defendant left the UK shortly after the victim reported the rape to the police and now apparently refuses to voluntarily return.

      **c. Defendant has Failed to Establish that he is not a Danger to the Community**.

The Court also finds that Defendant has failed to meet his burden, even by the lesser preponderance of the evidence standard, of establishing that he is not a danger to the community. Defendant is alleged to have committed a forcible rape against a struggling victim. As noted above, Defendant's lack of violent criminal history in this country does not outweigh the seriousness of the allegation. *See, e.g., In re Extradition of Pelletier*, 2009 WL 3837660, at *2; *Berrocal,* 263 F. Supp. 3d at 1300; *In re Extradition of Shaw*, 2015 WL 521183 at *7. The nature of the alleged rape does indicate that Defendant is a danger to the community.

## VI.    CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Government's Motion for Detention [DE 9] is **GRANTED**. Defendant's request for release on bond pending extradition is **DENIED**. The Court will set a prompt final Extradition Hearing by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of April 2021.

*[signature]*
WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE